UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

TEGRITY CONTRACTORS, INC.                    CIVIL ACTION

VERSUS                                       NO. 12-2555

THE SPECTRA GROUP, INC. ET AL.               SECTION "F"

ORDER AND REASONS

Before the Court are two motions: (1) the defendants's motion to set aside the entry of default, and (2) the defendants's motion to transfer.  For the reasons that follow, the motion to set aside the entry of default is GRANTED, and the motion to transfer is DENIED.

Background

This dispute arises out of the construction of a shopping center.

In early 2009, Tegrity Contractors, Inc., as general contractor, entered into a contract with The Spectra Group, Inc. and Boutte Shopping Center, LLC, for the construction of a shopping center and retail store located in Boutte, Louisiana. Tegrity alleges that it completed all the required work and provided all necessary materials under the terms of the contract; however, Spectra and Boutte Shopping have failed to pay Tegrity the agreed upon sum.  Tegrity asserts that it is still owed a minimum of $253,751.74.

1

On October 19, 2012, Tegrity filed suit in this Court, invoking the Court's diversity jurisdiction, naming as defendants Spectra; Boutte Shopping; and Jeff H. Farmer, Spectra's agent.[1] Tegrity alleges claims for breach of contract, open account, unjust enrichment, and statutory and contractual attorney's fees. On December 5, 2012, all three defendants jointly filed a motion for an extension of time to answer plaintiff's complaint.  The Court granted the motion on December 6, 2012, providing defendants twenty-one additional days to file responsive pleadings.  Therefore, required responsive pleadings were due on or before December 27, 2012.

On January 28, 2013, thirty days *after* the December 27, 2012 deadline, plaintiff moved for entry of default under Federal Rule of Civil Procedure 55(a), which the Clerk of Court granted on the same day.  Defendants now move to set aside the default entry and to transfer the case to the Western District of Tennessee.

I.

A.

Federal Rule of Civil Procedure 55(c) authorizes the Court to "set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  The Fifth Circuit has observed that good cause "is not

---

[1]  Tegrity is a Texas corporation with its principal place of business in Texas.  All three defendants are citizens of Tennessee.  The amount in controversy exceeds $75,000, and a substantial part of the events that gave rise to Tegrity's claims arose in St. Charles Parish, Louisiana.

susceptible of precise definition, and no fixed, rigid standard can anticipate all of the situations that may occasion the failure of a party to answer a complaint timely." <u>Dierschke v. O'Cheskey</u>, 975 F.2d 181, 183 (5th Cir. 1992).  Thus, "the requirement of 'good cause' . . . ha[s] generally been interpreted liberally." <u>Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.</u>, 346 F.3d 552, 563 (5th Cir. 2003) (alteration in original) (quoting <u>Amberg v. Fed. Deposit Ins. Corp.</u>, 934 F.2d 681, 685 (5th Cir. 1991)).

To determine whether good cause has been shown, the Court considers three nonexclusive factors: (1) whether the failure to act was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious defense has been presented by the defaulting party. <u>Id.</u>  Other factors, such as whether the party acted expeditiously in correcting the default, whether there was a significant financial loss to the defendant, and whether the public interest may be implicated by the default, may also be considered. <u>Dierschke</u>, 975 F.2d at 184. These factors should be applied consistent with the principle that defaults are generally disfavored and that resolving cases on the merits is preferable. <u>See</u> <u>Lacy v. Sitel Corp.</u>, 227 F.3d 290, 292 (5th Cir. 2000)("[F]ederal courts should not be agnostic with respect to entry of default judgments, which are generally disfavored in the law and thus should not be granted on the

3

claim, without more, that the defendant had failed to meet a procedural time requirement." (internal quotation marks omitted)); see also Amberg, 934 F.2d at 686 ("The Federal Rules are diametrically opposed to a tyranny of technicality and endeavor to decide cases on the merits. Strict enforcement of defaults has no place in the Federal Rules.").

*B.*

The defendants have shown good cause to set aside the entry of default entered against them.

Applying the first factor, which requires determining whether the failure to act was willful, the Court finds that the defendants's failure to answer amounts to excusable neglect rather than willful misconduct. See Broadwing Commc'ns, Inc. v. Harris, No. 00-1125, 2000 WL 1059863, at *2 (E.D. La. Aug. 1, 2000). This is further supported by the fact that the defendants did file a motion for an extension of time in which to file responsive pleadings, which the Court granted. Moreover, counsel for the defendants represents that he was in communication with the plaintiff's attorney and attempted to schedule mediation in this case before the default was entered. Therefore, the Court cannot conclude that this is a case of "an uncooperative party or an obstructionist adversary." Id.; see also Bona Fide Demolition & Recovery, LLC v. Crosby Constr. Co., No. 07-3115, 2009 WL 4060192, at *2 (E.D. La. Nov. 20, 2009) ("Though defendants

4

received proper service of [plaintiff's c]omplaints, their continued participation in . . . settlement discussions suggest that their lateness was more akin to inadvertent oversight than deliberate recalcitrance. . . . Defendants were not unavailable or otherwise unresponsive, as is commonly the case when a plaintiff moves for an entry of default." (citations omitted)).

As to the second factor, the Court finds that the plaintiff would not be prejudiced by setting aside the entry of default. In fact, this case is in the early stages of litigation; no trial date has been set, and discovery has not commenced.  The mere fact that setting aside the default would require the plaintiff to litigate the dispute is insufficient prejudice to require the default to stand.  See, e.g., Broadwing, 2000 WL 1059863, at *2; C&G Boats, Inc. v. Tex. Ohio Servs., Inc., 164 F.R.D. 57, 59 (E.D. La. 1995).  The defendants seek to defend the plaintiff's allegations by showing that the plaintiff's construction of the shopping center fell substantially behind the contractually agreed upon schedule, causing the defendants to incur substantial damages; thus, under the third factor, the defendants have shown that, if proven in Court, they could have meritorious defenses as to both liability and damages.

Other considerations weigh in favor of relieving the defendants from the entry of default.  The defendants acted expeditiously in correcting the default: this motion was filed

5

one day after entry of default and a motion to transfer was filed two days after default.  The defendants will also likely incur significant financial loss if the default entry stands, because the plaintiff's claim exceeds $250,000.

Accordingly, the Court finds that the defendants have shown good cause for setting aside the entry of default against them. The Court must now consider the defendants's request to transfer this case.

## II.

### A.

The Court may transfer an action to a more convenient forum as long as the transferee court is one in which the action could have been initially brought.  28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").  Indeed, the Court has broad discretion in determining whether to transfer a case pursuant to § 1404(a). Balawajder v. Scott, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting Caldwell v. Palmetto State Sav. Bank, 811 F.2d 916, 919 (5th Cir. 1987)).  The plaintiff's choice of forum places a "good cause" burden on the defendant seeking transfer. In re Volkswagen of Am., Inc. (Volkswagen II), 545 F.3d 304, 315 n.10 (5th Cir. 2008) (en

banc); see also In re TS Tech USA Corp., 551 F.3d 1315, 1320
(Fed. Cir. 2008).  As a result, the moving party must show that
transfer is "clearly more convenient." Volkswagen II, 545 F.3d at
315 (emphasis added).  Transfer would meet the convenience test,
but defendants' somewhat feeble submissions flunk the "clearly
convenient" test.  Defendants seem to take their burden lightly.

*B.*

The threshold question under § 1404(a) is whether the
lawsuit "might have been brought" in the transferee venue.  The
defendants seek transfer of this case to the Western District of
Tennessee.  Regarding venue, a civil action may be brought in "a
judicial district in which any defendant resides, if all
defendants are residents of the State in which the district is
located."  28 U.S.C. § 1391(b)(1).  A corporation "resides" in
any judicial district "in which such defendant is subject to the
court's personal jurisdiction with respect to the civil action in
question." Id. § 1391(c)(2).  The parties do not dispute that
all three defendants reside in Memphis, Tennessee;[2] thus,
plaintiff's suit could have been filed in the proposed transferee
forum.

*C.*

The Court next determines whether the moving party has

---

[2] See Rec. Doc. 1 at 1-2; Rec. Doc. 24-1 at 4-5.

demonstrated that the Western District of Tennessee is "clearly more convenient" than the Eastern District of Louisiana.  To do so, the Court balances relevant private and public interest factors.  To weigh the convenience of the two forums, the Fifth Circuit instructs the Court to consider the following private factors:

(1)  the relative ease of access to sources of proof;

(2)  the availability of compulsory process to secure the attendance of witnesses;

(3)  the cost of attendance for willing witnesses;

(4)  all other practical problems that make trial of a case, easy, expeditious, and inexpensive;

In addition, the Court is instructed to examine public interest factors such as:

(1)  the administrative difficulties flowing from court congestion;

(2)  the local interest in having localized interests decided at home;

(3)  the familiarity of the forum with the law that will govern the case; and

(4)  the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

<u>Volkswagen II</u>, 545 F.3d at 314.  Just as this list of factors is not exhaustive, nor is any one factor of dispositive weight.  <u>Id.</u> Also, importantly, the plaintiff's choice of venue is not a factor in the analysis; rather, it contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue.  <u>Id.</u> at 315.

1.   The Private Interest Factors Weigh Slightly in Favor of the
     Eastern District of Louisiana

   (a)  *Ease of Access to Sources of Proof*

   Even though access to some sources of proof presents a
lesser inconvenience now than it used to, the Fifth Circuit has
instructed that this factor may not be read out of the § 1404(a)
analysis.  Id. at 316.  Defendants assert that the crux of
Tegrity's complaint involves a payment dispute, not the
construction of the shopping center.  Therefore, all the key
witnesses and documents pertaining to the shopping center are
located in Memphis, Tennessee--the location from which the
defendants managed and oversaw most of the project.

   The plaintiff counters, and supports with an affidavit of
record, that almost all witnesses who will testify as to the
plaintiff's performance are located in Louisiana.  This includes
the local subcontractors hired by the plaintiff and any experts
that might inspect the shopping center.

   The Court acknowledges that relevant documents may be
available in Texas and Tennessee (the locations in which the
contract was allegedly negotiated).  However, there are sources
of proof that are uniquely available in Louisiana.  Although the
burden is not on the plaintiff (as the nonmoving party) to
support its position with evidence, Tegrity nonetheless submits
an affidavit of record with its submission papers, which states

9

that the construction site and all subcontractors, who plaintiff anticipates will be called as witnesses, reside in Louisiana. Therefore, the Court finds this factor weighs slightly against transfer.

(b)  *Securing Attendance of Unwilling Witnesses*

Federal Rule of Civil Procedure 45(b)(2) governs the place where a subpoena issued by a federal court may be served.  The Court's subpoena power, however, is subject to Rule 45(c)(3), which protects nonparty witnesses who work or reside more than 100 miles from the courthouse; those unwilling witnesses may quash a subpoena when the witness would be required to travel more than 100 miles and to another state.  Courts have recognized that the availability and convenience of witnesses is an important factor in a § 1404(a) analysis, but the party moving for transfer must do more than "'make a general allegation that certain key witnesses are needed.'"  Hills v. Brinks, Inc., No. 07-4207, 2008 WL 243944, at *5 (E.D. La. Jan. 25, 2008) (quoting Dupre v. Spanier Marine Corp., 810 F. Supp. 823, 825 (S.D. Tex. 1993)).  Rather, the moving party must "specifically identify the key witnesses and outline the substance of their testimony." Id.; see also Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc., 331 F. Supp. 2d 567, 574 (E.D. Tex. 2004); Becnel v. Smile Cmty. Action Agency, Inc., 207 F. Supp. 2d 520, 522 (M.D. La. 2001); McDonough Marine Serv. v. Royal Ins. Co., No. 00-3134, 2001 WL 576190, at

10

*3 (E.D. La. May 25, 2001).  Defendants fail in this task.

Defendants summarily assert that "all witnesses" are located in Memphis or Dallas, and deduce that convenience necessitates a transfer to Tennessee.  Defendants provide no details whatsoever concerning the names of the key witnesses or their likely testimony.  Defendants also contend that the witnesses are located in Tennessee because the "plaintiff is seeking recovery of money, which is under the control of the defendants who reside in Tennessee."  Defendants fail to acknowledge, however, that key witnesses who are employees of those seeking transfer are entitled to less weight in this analysis, simply because their employees can be compelled to give testimony at trial. See, e.g., Hills, 2008 WL 243944, at *5; Carpenter v. Parker Offshore Drilling USA, Inc., No. 05-265, 2005 WL 1432373, at *2 (E.D. La. June 16, 2005); Z-Tel Commc'ns, 331 F. Supp. 2d at 573-74.  The Court notes that the plaintiff similarly fails to identify with any specificity its witnesses or their accompanying testimony;[3] however, the Fifth Circuit has expressly stated that the burden is on the moving party, not the nonmoving party, to establish that the transferee district is "clearly more convenient." Volkswagen II, 545 F.3d at 315.

---

[3] Even though the plaintiff fails to provide details, the plaintiff at least submits to the Court an affidavit of record, which swears to the location of the nonparty witnesses it plans to call at trial.  Defendant submits no evidence to support its position on this factor (or any factor for that matter).

Accordingly, the defendants have wholly failed to carry their burden of showing that Tennessee would be a more clearly convenient forum for witnesses in this case, and the Court finds that this factor weighs against dismissal.

*(c)  Cost of Attendance for Willing Witnesses*

In Volkswagen I, the Fifth Circuit set a 100-mile threshold: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." In re Volkswagen AG (Volkswagen I), 371 F.3d 201, 204-05 (5th Cir. 2004) (reasoning that the additional distance means additional travel time, which increases the probability for meal and lodging expenses, and the time that witnesses must spend away from their regular employment).  The Court recognizes that New Orleans is more than 100 miles from the Memphis area, and that this factor lends itself to transfer.

However, unlike the situation in Volkswagen II, in which the defendants submitted details about the hardships their prospective witnesses would have to incur, the defendants here offer no indication of who is even necessary as a witness.  See, e.g., Z-Tel Commc'ns, 331 F. Supp. 2d at 575 ("These witnesses do not explain the nature of such inconvenience. . . . There is no doubt that litigation taxes the resources of defendant companies.

12

This reality is an unfortunate, but ineluctable, byproduct of the civil justice system. . . . Defendant has failed to sufficiently separate the inconvenience specific to 'work and home responsibilities' [as contemplated by the Fifth Circuit in <u>Volkswagen I</u>] from general inconvenience intrinsic to litigation.").

Therefore, based on the distance alone, and because the defendants offer nothing more than conclusory self-serving assertions, the Court finds this factor leans (if any) in favor transfer.  <u>Cf.</u> <u>Hills</u>, 2008 WL 243844, at *6 (finding that this factor does not weigh in favor of transfer because the defendants failed to identify their witnesses and the potential burdens they might incur).

*(d)  All other practical problems that make trial of a case, easy, expeditious, and inexpensive*

This case is still in its infancy stage.  No trial date has been set and discovery has not yet commenced.  Neither party would likely suffer any prejudice if the Court transfers the case.  Therefore, this factor is neutral.

2.  The Public Interest Factors are Neutral

*(a)  Court Congestion*

Defendants do not assert that this case presents any particular administrative difficulties or threatens to clog any

13

court's docket.  It is a relatively straightforward breach of contract case.  Therefore, the Court finds this factor neutral.

*(b) Local Interest*

This factor is also neutral.  There is a local interest in having localized controversies decided locally.  Although this contract dispute arises out of construction services rendered by plaintiff in Boutte, Louisiana, both parties represent that communications and negotiations occurred in their respective offices in Texas and Tennessee.  It can be argued that Texas and Tennessee have a greater local interest than Louisiana in protecting the contractual rights of its business companies; however, this factor does not weigh in favor of transfer to Tennessee, especially in light of the fact the plaintiff asserts that various Louisiana subcontractors are potentially affected by defendants's alleged breach.

*(c) Familiarity of Forum with Governing Law and Avoidance of Unnecessary Problems of Conflict of Laws or Application of Foreign Laws*

Because the Court's jurisdiction is based on diversity of citizenship, the choice of law rules of Louisiana, the forum state, apply.  See <u>Klaxon Co. v. Stenton Elec. Mfg. Co.</u>, 313 U.S. 487 (1941); <u>Duhon v. Union Pac. Res. Co.</u>, 43 F.3d 1011 (5th Cir. 1995).  Article 3540 of the Louisiana Civil Code provides that contract issues are "governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law

14

contravenes the public policy of the state whose law would
otherwise by applicable under Article 3537." Therefore, if the
contract in this case does not address choice of law, then
Article 3537 provides the relevant factors for determining which
law applies.[1] These factors consider, among other things, the
pertinent contacts of each state to the parties and the
transaction, including the place of negotiation, formation, and
performance of the contract. The nature, type, and purpose of
the contract is also considered.

Defendants oddly contend that it is unclear whether the
contract at issue here includes a choice of law provision. One
would think the record would be clearer, but it is not. Assuming
the contract lacks such a provision, defendants assert (without
any analysis) that either Tennessee or Texas law will apply, and
the Tennessee court is better suited to resolve this case. The
Court cannot say at this time which law would apply, and

_____

[1] The Article 3537 factors are: (1) the pertinent contacts
of each state to the parties and the transaction, including the
place of negotiation, formation, and performance of the contract,
the location of the object of the contract, and the place of
domicile, habitual residence, or business of the parties; (2) the
nature, type, and purpose of the contract; and (3) the policies
referred to in Article 3515, as well as the policies of
facilitating the orderly planning of transactions, of promoting
multistate commercial intercourse, and of protecting one party
from undue imposition by the other.
    Article 3515 factors include (1) the relationship of each
state to the parties and the dispute, and (2) the policies and
needs of the interstate and international systems, including the
policies of upholding the justified expectations of  parties and
of minimizing the adverse consequences of subjecting a party to
the law of more than one state.

defendants have not shown that Tennessee or Texas contract law is
so different from the laws of Louisiana that this Court would
struggle to apply it.  See Hills, 2008 WL 243944, at *7 ("This
Court has applied the laws of other states in numerous other
diversity suits . . . . There is no reason that it would be
unable to do so in this case.").  Therefore, the Court finds the
final two factors neutral.

In sum, one factor weighs slightly in favor of transfer
while the remainder of the factors are neutral or weigh against
transfer.  The Court finds that defendants have simply failed to
meet their burden of showing that the Western District of
Tennessee is "clearly more convenient" than the Eastern District
of Louisiana.  See Volkswagen II, 545 F.3d at 315.  As the Fifth
Circuit instructs, "when the transferee venue is not clearly more
convenient than the venue chosen by the plaintiff, the
plaintiff's choice should be respected."  Id.  This is further
bolstered by the case literature within this Circuit, which
supports a finding against transfer when the factors are at best
neutral.  See, e.g., Safety-Kleen Sys., Inc. v. McCoy
Freightliner, Inc., No. 10-608, 2011 WL 2009958, at *7 (E.D. Tex.
Apr. 11, 2011); Modern Am. Recycling Servs., Inc., v. Dunavant,
No. 10-3153, 2011 WL 1303136, at *5-7 (E.D. La. Mar. 31, 2011);
Crowley v. Mike Hooks, Inc., No. 09-1084, 2009 WL 4758727, at *4
(W.D. La. Dec. 8, 2009); Acosta v. United States, No. 01-007,

16

2001 WL 1910558, at *4 (W.D. Tex. Sept. 21, 2001).

Accordingly, it is HEREBY ORDERED THAT the defendants's motion to set aside the entry of default is GRANTED, and the defendants's motion to transfer is DENIED.

New Orleans, Louisiana, February 21, 2013

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE